S. C. IVES, The (KYNOCH v.). See Case No. 7,958.

———

## Case No. 12,509.

### In re SCOFIELD et. al.

[3 N. B. R. 551 (Quarto, 137).] [1]

District Court, S. D. New York. March 3, 1870.

BANKRUPTCY—PARTNERSHIP—FAILURE OF ONE TO FILE SCHEDULE—DISCHARGES.

Where a member of a bankrupt firm had failed to file schedule of his personal property, *held*, the other members would not, on that account, be refused a discharge.

[In the matter of Demetrius G. Scofield, Samuel L. Scofield, and John M. Moorhead, bankrupts. For prior proceedings in this litigation, see Case No. 12,510.]

Aaron J. Vanderpoel and J. Stanley Smith, for the bankrupts.

Elliott F. Shephard, for the creditor.

BLATCHFORD, District Judge. In this case the discharge of the two Scofields is opposed by the receiver of the Croton National Bank as a creditor. The bankrupts composed the firm of D. G. Scofield & Co. The first specification charges willful false swearing by the Scofields, in making oath that the schedules and inventory filed with their petition, state fully and truly their debts and estate, and those of said firm; whereas: 1st. The firm of W. H. and F. B. Taylor, who are in such schedules asserted to be creditors of said firm for the sum of twelve thousand three hundred and fifty dollars and eighty-three cents, are not its creditors for any sum, but are indebted to it or to D. G. Scofield, in the sum of eighty thousand dollars, or in a considerable sum of money, no part whereof is included among the assets of said firm or of either of said bankrupts, as stated in said schedules. 2d. H. N. Tibbits, who is asserted in said schedules to be a creditor of said firm for the sum of twenty-five thousand dollars, is not its creditor for any sum. 3d. The bankrupts, or said firm, or D. G. Scofield individually, owned at the time of the filing of the petition certain real estate known as the Cunningham mill property, situated at the southeasterly corner of First avenue and Twenty-Ninth street, in the city of New York, and four lots of land situated at the southwest corner of First avenue and Twenty-Seventh street in said city, which two parcels of prop-

erty falsely and fraudulently stand in the name of William H. Taylor. 4th. D. G. Scofield was at the time of the filing of the petition the owner of a valuable horse now or lately in the possession of said Taylor, or his said firm, and of a certain library, certain furniture, and other personal property. The second specification alleges that the bankrupts have concealed a claim for an undisputed account against said Taylor or his said firm, arising from the sale of certain securities formerly given to said Taylor or his said firm, by the bankrupts or one of them, or their said firm, and also arising from the said real estate, which passed into the hands of said Taylor, from D. G. Scofield, with intent to defraud his creditors and those of his said firm, and for which Taylor or his said firm is under obligation to account to the creditors of D. G. Scofield or of his said firm, and also a horse, a library, and certain furniture, and other personal property. The third specification alleges that each of the bankrupts has been guilty of negligence and fraud in omitting to deliver the said property to the assignee herein. The fourth specification alleges that since the passage of the bankruptcy act [of 1867 (14 Stat. 517)] the bankrupts have altered their ledger A and their cash-book A, and other books of their said firm, and falsified the same by introducing therein entries showing large amounts of money from W. H. & F. B. Taylor, which were never so borrowed, and in other ways; a portion of said false and fraudulent entries being found on pages 25 and 26 of said ledger, and on pages 1 to 49, inclusive, of said cash-book, and others in said books. The fifth specification alleges that the bankrupts have made or been privy to making false and fraudulent entries in their books of account or those of their said firm, being the entries specified in the fourth specification, and others, with intent to defraud their creditors. The sixth specification alleges that since the passage of the bankruptcy act, D. G. Scofield has removed or caused to be removed from this district a portion of his property, to wit, a valuable horse and other property, with intent to defraud his creditors. The seventh specification alleges that the bankrupts have, in contemplation of becoming bankrupt, made certain pledges, payments, transfers, assignments, or conveyances of certain portions of their property, directly or indirectly, absolutely or conditionally, for the purpose of preferring a certain creditor or person or persons having a claim against them, or for the purpose of preventing the property from coming into the hands of the assignee or of being distributed under the act, to wit, certain gold checks and large sums of money amounting in the aggregate to seventy-five thousand dollars or thereabouts, paid by the bankrupts to said Taylor or his said firm, the whole or a portion of which moneys the bankrupts, in collusion with said Taylor, fraudulently obtained from the Croton National Bank; and the said real estate, and certain horses,

———

[1] [Reprinted by permission.]

carriages, furniture, etc., which were for said fraudulent purposes mortgaged to said Taylor about 10th March, 1866, and the proceeds whereof said Taylor has received. The eighth specification alleges that the firm of D. G. Scofield & Co. ought not to be discharged from its debts and liabilities, because the bankrupt Moorhead has not made or filed any schedule of debts, or inventory of effects, as required by the act, and has not delivered his property or any portion thereof into the hands of the assignee.

The firm of D. G. Scofield & Co. was formed about February 1st, 1866, and did business as brokers and speculators generally in stocks and gold. The firm kept its bank account in the Croton National Bank, which bank was in the habit of loaning to it daily large sums of money without taking any security, by allowing it to overdraw its account during the day, provided the deficiency was made good by the close of the day. On the 4th of April, 1866, the firm thus overdrew the sum of sixty-three thousand dollars, failed to replace it. and suspended payment. During its continuance in business, the firm did business as brokers in buying and selling gold for W. H. & F. B. Taylor, and borrowed large sums of money from W. H. & F. B. Taylor. On the 3d of April, 1866, W. H. Taylor gave to the bankrupt's firm an order to purchase for W. H. & F. B. Taylor, from fifty thousand to seventy-five thousand dollars of gold, and such firm purchased about seventy thousand dollars of gold, deliverable and to be paid for the next day. During the 4th of April, about fifty thousand dollars of the gold so purchased was delivered by the sellers of it to the bankrupt's firm. That firm paid for it by checks on the Croton National Bank, and delivered it to W. H. Taylor, and charged it to his said firm in account. The bankrupt's firm also delivered to W. H. & F. B. Taylor, on the 4th of April, currency checks to the amount of twenty-four thousand dollars, and charged the same to that firm in account.

The foregoing facts are not disputed. The contest is as to whether the bankrupt's firm were indebted to W. H. & F. B. Taylor to an amount equal to the amount of the gold and checks so put into the hands of W. H. & F. B. Taylor. The creditor alleges that such indebtedness did not exist, but that the transaction was a scheme of fraud to put into the hands of W. H. & F. B. Taylor, the gold and checks in question in trust for the benefit of the bankrupt's firm. and for the purpose of defrauding their creditors. The bankrupts claim that on the morning of April 4th, at the commencement of business, their firm was indebted to W. H. & F. B. Taylor for borrowed money in the sum of nearly one hundred thousand dollars. The Taylors had in their hands a large amount of stocks which they had received from the bankrupt's firm, and those stocks were returned by the Taylors to the bankrupt's firm on the 4th of April, after the Taylors had received the gold and checks in question. Those stocks were largely petroleum stocks.

Such petroleum stocks were declining rapidly in selling value on and just before the 4th of April, and have since turned out to be almost wholly worthless. What became of the stocks so returned by the Taylors is fully shown by the evidence.

From a careful examination of the testimony I am satisfied that the creditor has failed to establish his claim that the gold and checks given to the Taylors on the 4th of April, were not given on account of bona fide indebtedness due by the bankrupt firm to the Taylors' firm at the time, or his claim that W. H. Taylor or his firm constituted a part of the copartnership of the bankrupts' firm, or that the amount alleged in the schedules of the bankrupts to be still due by their firm to W. H. & F. B. Talyor, is not due. The integrity of the entries found in the books of account of the bankrupts' firm as to their transactions with the Taylors' firm, is not successfully impeached. Those entries show that after charging against the Taylors' firm the gold and the checks in question, and all other items that ought to be so charged, the amount of indebtedness stated in such schedules still remains due to the Taylors' firm. Whether the debt to the Croton National Bank was created by fraud or will be discharged by a discharge granted herein, is not the question. The question is, whether the property turned over to the Taylors by the bankrupts went to apply on a bona fide debt due by the bankrupts' firm to the Taylors. I think on the evidence that it did. The indebtedness to Tibbets appears to be still outstanding. At all events no willful false swearing in respect thereto by the Scofields is shown. The transactions in regard to the creation of such indebtedness were carried on by the bankrupt Moorhead to the exclusion of the Scofields, and in inserting in their schedules that indebtedness as still existing, the Scofields acted on information derived from Moorhead, and which they had a right to believe to be true. On the proofs the real estate and horse and library and furniture mentioned. did not belong to the bankrupts. or to either of them, when their petition was filed. The bankrupts have not concealed any claim for an account against W. H. Taylor. or his firm. arising from the sale of any securities formerly given to said Taylor, or his firm, or from any real or personal property, nor have they been guilty of negligence or fraud in omitting to deliver any such property to the assignee. It is not established that the bankrupts have altered or falsified their books of account in any manner, or made, or been privy to making any false or fraudulent entries in any of them. There is no evidence that D. G. Scofield has removed or caused to be removed any property of his from this district.

The seventh specification. in so far as it purports to charge the existence at the time of the filing of the bankrupts' petition of property of theirs which they failed to dispose, is merely a repetition of preceding specifications. In so far as it charges the doing, in 1866, of

the acts which it specifies, it alleges acts which were done before the passage of the bankruptcy act, and which are therefore not within the purview of the 29th section of the act, as acts the doing of which authorizes the refusal of a discharge. The eighth specification amounts to nothing. The firm of D. G. Scofield & Co. is not to be discharged. The Scofields are to be discharged. By section 36 of the act a discharge is to be granted or refused to each of the Scofields as it would be if Moorhead were not a party to these proceedings. The specifications are all of them overruled, and discharges are granted to Demetrius G. Scofield, and Samuel L. Scofield.